# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 2:22-mj-30
Records relating to Google accounts: Gmail, Chat, Meet, )
Google Drive, with username james1021build@gmail.com )
which are stored at the premises controlled by Google )
Inc.,1600 Amphitheatre Pkwy, Mountain View, CA 94043

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT B, INCORPORATED HEREIN BY REFERENCE

located in the     Northern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT A, INCORPORATED HEREIN BY REFERENCE

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec 2252, 2252A | Receipt, distribution and/or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct via a means or facility of interstate commerce |
| 18 U.S.C. Sec 2422 | Coercion or enticement of a minor to engage in sexually explicit activity |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT, INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nate Simon*
Applicant's signature

Nate Simon, HSI SA
Printed name and title

Sworn to before me and signed in my presence.

Date: January 19, 2022

*Kimberly A. Jolson*
Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, Ohio

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT, EASTERN DIVISION OF OHIO

| | |
|---|---|
| In the Matter of the Search of: ) | |
| ) | |
| Content and records relating to the Google ) | Case No. 2:22-mj-30 |
| Accounts: Gmail, Chat, Meet, Google Drive ) | |
| with username james1021build@gmail.com ) | |
| which are stored at premises controlled ) | Magistrate Judge: |
| by Google, Inc. 1600 Amphitheatre Parkway, ) | |
| Mountain View, CA 94043 ) | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Homeland Security Investigations Special Agent Nate Simon, being first duly sworn, hereby depose and state as follows:

### I. AGENT BACKGROUND AND EXPERIENCE

1. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), in Columbus, Ohio and have been employed by HSI since its inception in 2003. I am currently assigned to the Franklin County Sheriff's Office ("FCSO") Internet Crimes Against Children (ICAC) Task Force conducting online child enticement and child pornography investigations. I have received specialized training in the area of internet crimes involving child exploitation and child pornography.

2. During my career I have participated in various investigations involving computer-related offenses and have executed numerous search warrants, including those involving searches and seizures of computers, computer equipment, software, and electronically stored information. I have received both formal and informal training in the detection and investigation of computer-related offenses. As part of my duties I investigate criminal child exploitation and child pornography offenses, including violations pertaining to the illegal distribution, transmission, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A, as

well as 18 U.S.C. § 2422, relating to the coercion and enticement, or attempted coercion and enticement, of a minor to engage in illegal sex acts (the "SUBJECT OFFENSES").

3. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

## II. PURPOSE OF THE AFFIDAVIT

4. This affidavit is submitted in support of an application for a search warrant for information associated with a certain Google, Inc. account, **james1021build@gmail.com** (the "**SUBJECT ACCOUNT**"), that is stored at premises controlled by Google, Inc., an Electronic Communications Service Provider and Remote Computing Service Provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Google, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment A. Upon receipt of the information described in Section I of Attachment A, government-authorized persons will review that information to locate the items described in Section II of Attachment A.

5. The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other investigators, officers, and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth the facts that I believe necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A, and 2422, are present in the information associated with the **SUBJECT ACCOUNT**.

6. This affidavit is submitted in connection with an investigation into the receipt/possession of child pornography, and the coercion/enticement of a minor. Based on my training and

experience, the training and experience of other officers, and the facts as set forth in this affidavit, there is probable cause to believe that **James SABOLICK** has committed violations of 18 U.S.C. §§ 2252 and/or 2252A, and 2422.  There is also probable cause that contained within the information associated with the **SUBJECT ACCOUNT** there will be found evidence, instrumentalities, contraband, and fruits of these crimes, as further described in Attachment A.

### III.  JURISDICTION

7.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).]

### IV. APPLICABLE STATUTES AND DEFINITIONS

8.  Title 18, United States Code, Section 2252, makes it a federal crime for any person to knowingly receive, distribute or possess any visual depiction of a minor engaging in sexually explicit conduct, if such receipt, distribution or possession utilized a means or facility of interstate commerce, or if such visual depiction has been mailed, shipped or transported in or affecting interstate or foreign commerce.  This section also prohibits reproduction for distribution of any visual depiction of a minor engaging in sexually explicit conduct, if such reproduction utilizes any means or facility of interstate or foreign commerce, or is in or affecting interstate commerce.

9.  Title 18, United States Code, Section 2252A makes it a crime to knowingly mail, transport, ship, receive, distribute, reproduce for distribution, sell or possess child pornography in interstate commerce.  It also makes it a crime to advertise, distribute or solicit in interstate commerce any material that reflects the belief or is intended to cause another to believe that the material contains an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct.

10. As it used in section 2252, the term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(A) as follows—actual or simulated: sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

11. For purposes of section 2252A, the term "child pornography"[1] is defined in 18 U.S.C. § 2256(8) as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where:

   A. the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

   B. such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

   C. such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

12. The term "sexually explicit conduct" has the same meaning in § 2252A as in § 2252, except for the section (B) definition of child pornography it also means:

   i. graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;

   ii. graphic or lascivious simulated; (I) bestiality; (II) masturbation; (III) sadistic or masochistic abuse; or

   iii. graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

13. "Graphic" when used with respect to a depiction of sexually explicit conduct, means that a viewer can observe any part of the genitals or pubic area of any depicted person or animal

---

[1] The term child pornography is used throughout this affidavit. All references to this term in this affidavit and the Attachments include both visual depictions of minors engaged in sexually explicit conduct as referenced in 18 U.S.C. § 2252 and child pornography as defined in 18 U.S.C. § 2256(8).

4

during any part of the time that the sexually explicit conduct is being depicted. See 18 U.S.C. § 2256(10).

14. The following terms have the same meanings or explanations in both statutes:

A. "minor" means any person under the age of eighteen years, pursuant to 18 U.S.C. § 2256(1);

B. "visual depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image, pursuant to 18 U.S.C. § 2256(5);

C. "computer" is defined in 18 U.S.C. § 1030(e)(1) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

15. Title 18, Section 2422(b), makes it a crime to, using any means of interstate commerce, persuade, induce, entice, or coerce (or attempt to do any of the above) anyone under 18 years old to engage in any sexual activity for which any person can be charged with a criminal offense.

16. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

17. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that

are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

18.  "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet.  Every computer requires an IP address to connect to the Internet.  IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

V.  **TECHNICAL INFORMATION REGARDING GOOGLE**

19.  Through my training and experience, I have learned that Google, Inc. (hereinafter "Google") provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public.  Google allows subscribers to obtain e-mail accounts at the domain name "gmail.com" like the e-mail account listed in Attachment B.  Subscribers obtain an account by registering with Google.  During the registration process, Google asks subscribers to provide basic personal information.  Therefore, the computers of Google are likely to contain stored electronic communications and information concerning subscribers and their use of Google services, such as account access information, e-mail transaction information, and account application information.

20.  In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "Inbox" on Google servers until the subscriber deletes the e-mail.  If the subscriber does not delete the message, the message can remain on Googles servers indefinitely.  The user can move and store messages in and out of user created folders.  In recent years, Google and other e-mail providers have provided their users with larger storage capabilities associated with the user's e-mail account.  According to Google's online Google Workspace, users can consume up to 30 GB of free e-mail storage. Based on my own experience, and conversations with more experienced law enforcement officers, I have learned that search warrants for e-mail accounts and computer

systems have revealed stored e-mails sent and/or received many years prior to the date of the search.

21. When the subscriber sends an e-mail, it is initiated at the user's computer or handheld device, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google server, the e-mail can remain on the system indefinitely.

22. A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Google but may not include all of these categories of data.

23. A Google subscriber can also store files, including e-mails, notes, address books, contact or buddy lists, calendar data, pictures, and other files on servers maintained and/or owned by Google. Subscribers to Google might not store copies of these e-mails on their home computers. This is particularly true when they access their Google account through a web browser, or if they do not wish to maintain particular e-mails or files in their residence.

24. In general, e-mail providers like Google ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information could include the subscriber's full name, physical address, telephone numbers and other identifiers, such as alternate e-mail addresses, and for paying subscribers, the means and source of payment (including any credit or bank account number).

25. E-mail providers typically retain certain transaction information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via

Google's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

26. In some cases, e-mail account users will communicate directly with an e-mail provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

27. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

28. In addition to email, a Google account has a number of Google products available that are internet based and can by synchronized across other Google owned services. The following is a non-exhaustive list of Google products available to Google account holders that provides features and functions of each.

29. A Google user profile is an account of a user that is attached to many Google properties. The user profile includes basic social networking services like a profile photo, about section, background photo, cover photo, previous work and school history, interests, placed lived and an area to post status updates.

30. Google Chat is an application that allows users to send direct messages or participate in group conversations with other users. Chat can be accessed in a standalone app or in Gmail. Files and tasks may be shared across the platform with other users.

8

31. Google Meet is an application that allows users connect through a video call by one user creating a link and sending it to others. Meet can also be accessed through a standalone app or through Gmail.

32. Google Drive is a file storage and synchronization service developed by Google. Google Drive allows users to store files on their servers, synchronize files across devices and share files. Google Drive offers users 15 gigabytes of free storage with virtually unlimited storage space through an optional paid plan. Digital files uploaded can be up to 5 terabytes in size.

33. Google Drive users have the ability to upload any digital file to Google Drive for data retention and data backup. Google Drive users have the ability to access content from their Google Drive account from any device connected to the internet; computer, tablet, Android smartphone or iPhone.

34. The privacy setting allows Google users to disclose certain information to the Google products of their choice. Users can also see their profile visitors.

35. Google also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Google products, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Google profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

36. Social networking providers like Google typically retain additional information about their user's accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Google users may communicate directly with Google about issues relating to their account(s), such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Google typically retain records about such communications, including records of contacts

9

between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communication.

37. Therefore, the computers of Google are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Google products, such as account access information, transaction information, and account application information.

## VI. INVESTIGATION AND PROBABLE CAUSE

38. On or about July 24, 2021, at approximately 3:12am, the Marietta Police Department ("MPD") initiated a traffic stop on I-77 South in Marietta, Ohio, on a 2004 Mercury Mountaineer, bearing Ohio registration JFS4611. Despite MPD activating their emergency equipment, the driver of that SUV, now known as **James SABOLICK**, continued driving away from MPD, crossing over a bridge before ultimately coming to a stop in West Virginia. The bridge **SABOLICK** crossed runs over the Ohio River and connects the State of Ohio to the State of West Virginia.

39. After stopping **SABOLICK**'s vehicle, MPD approached the SUV and observed an individual attempting to conceal themselves in the backseat. When asked if anyone else was inside the SUV, **SABOLICK** initially indicated he was alone. He ultimately changed his story and then admitted that there was another individual inside the vehicle. MPD identified that individual as a 17-year-old female (hereinafter referred to as "Minor Victim").

40. Law enforcement with the Southeastern Ohio Human Trafficking Task Force ("SOHTTF") from the Washington County Sheriff's Office ("WCSO") then arrived on scene. An initial interview with Minor Victim was then conducted. In that interview, Minor Victim confirmed that she and **SABOLICK** had been having sex and indicated that this had occurred five or more times. WCSO learned the Minor Victim had snuck out of her residence in Walker, West Virginia to have sex with **SABOLICK**. Minor Victim confirmed that **SABOLICK** picked

10

her up near her residence in West Virginia and then subsequently took her to a cabin located near his residence in Ohio.

41. **SABOLICK** was then placed under arrest for Obstructing Official Business and Failure to Signal. Recovered on his person was a Samsung cellphone in a blue case, an Apple iPhone in a black case, and a USB flash drive.

42. Upon his arrest, **SABOLICK** was interviewed by WCSO. After being read his Miranda rights, **SABOLICK** told law enforcement that the Minor Victim was 17 years old. He admitted he "went down [to West Virginia] and got her" and stated that he then took Minor Victim to a hunting cabin near his residence. He also admitted to receiving nude pictures of the Minor Victim in the past as well as possessing nude pictures of the Minor Victim on his cellphone. In addition, **SABOLICK** also admitted to communicating with Minor Victim on the phone.

43. During the course of the conversation with WCSO, **SABOLICK** consented to his Samsung cellphone being searched. During a cursory review by WCSO, several photographs depicting Minor Victim nude were observed on his Samsung cellphone. In one of the photographs, Minor Victim is observed with a large serving spoon inserted into her anus. The investigation revealed that the photographs of Minor Victim that were observed were taken at the hunting cabin **SABOLICK** had referenced, located at 300 Coon Run Road in Lower Salem, Ohio.

44. On or about July 24, 2021, a forensic interview of Minor Victim was completed. During that interview, Minor Victim stated around midnight [July 24, 2021], **SABOLICK** picked her up from her residence in Walker, West Virginia and took her to a cabin in Ohio (later identified as 300 Coon Run Rd. Lower Salem, Ohio). While at the cabin on Coon Run Road, Minor Victim stated that she and **SABOLICK** engaged in oral, vaginal, and anal sex. Minor Victim also revealed **SABOLICK** poked her nipples with a sewing needle, used a lighter to burn her nipples, pulled her hair, used panty hose to tie her up and strangle her, inserted an object in her anus, had the Minor Victim drink his urine, and then urinated in Minor Victim's mouth and

on her body. Minor Victim also confirmed that **SABOLICK** photographed her nude body and genitalia during this encounter using his phone. Minor Victim also confirmed that she and **SABOLICK** had engaged in sex acts in both the state of West Virginia and the state of Ohio.

45. In the interview, Minor Victim further revealed that the previous year, she and **SABOLICK** had sex on a vehicle while it was parked in West Virginia and that while they had sex, Minor Victim's 10-year-old sister watched. Minor Victim stated that **SABOLICK** told her that her sister was "kinky." Minor Victim also stated that **SABOLICK** then told her younger sister "I might do this to you one day."

46. When asked how Minor Victim and **SABOLICK** communicated, Minor Victim stated that she both called and texted with **SABOLICK** using her cellphone. In addition, Minor Victim indicated that she also communicated with **SABOLICK** on the social media applications Instagram and Facebook.

47. WCSO then added the charges of Pandering Sexually Oriented Material Involving a Minor, Possession of Criminal Tools, Interference with Custody/Taking a Child Across State Lines to **SABOLICK's** arrest.

48. On or about July 24, 2021, a search warrant was executed at 300 Coon Run Road in Lower Salem, Ohio. Law enforcement observed the structure to be the hunting cabin where **SABOLICK** took Minor Victim to engage in sexual intercourse. The investigation also revealed that the interior of the cabin matched the background of the sexually explicit photographs taken of Minor Victim that were recovered on **SABOLICK's** Samsung cellphone. WCSO seized numerous items from the hunting cabin, including a black plastic spoon which appeared to be the same spoon that had been inserted into the anus of the Minor Victim which was depicted in a photograph that had been reviewed by law enforcement. Also seized were soiled paper towels/napkins, a black and gray spatula, a deer blanket, and a white pill capsule. In addition to the items seized, photographs were taken of the interior of the hunting cabin.

49. During the course of the investigation, law enforcement learned that **SABOLICK** resided at 7415 Germantown Road in Lower Salem, Ohio. Specifically, a record check through the Ohio Bureau of Motor Vehicles ("BMV") revealed that **SABOLICK** had registered the 7415 Germantown Road address on his driver's license and, in addition, registered a 2004 Mercury Mountaineer with Ohio license plate JFS4611 with that same address. The 2004 Mercury Mountaineer registered to **SABOLICK** was the same vehicle he was driving when he was arrested. Furthermore, a State of Ohio certificate of title was found during a search of **SABOLICK's** vehicle. The certificate of title listed **SABOLICK** with address 7415 Germantown Road Lower Salem, Ohio as the owner of the 2004 Mercury Mountaineer.

50. On or about July 24, 2021, an additional search warrant was executed at the 7415 Germantown Road residence belonging to **SABOLICK**. Pursuant to that search warrant, numerous items were seized including panty hose, a blue 160 GB external hard drive, a USB and flash drive, an Xbox 360, a mobile phone, a Dell laptop, a Dell laptop with external hard drive, address books, and an ASUS tablet.

51. On or about July 27, 2021, a search warrant was also obtained for the three digital media devices recovered from **SABOLICK's** person the night of his arrest. More specifically, the search warrant related to the Samsung cellphone in a blue case, an Apple iPhone in a black case, and a USB flash drive.

52. Finally, on July 28, 2021, WCSO executed a search warrant on the 2004 Mercury Mountaineer, bearing Ohio registration JFS4611, which is the vehicle **SABOLICK** was driving the Minor Victim in the night of his arrest. Recovered from that Mercury Mountaineer were numerous items, including panty hose, lubricant, white towels, a twisted tea can, and a box of t-pins.

53. On July 29, 2021, your affiant met with WCSO and the Southeastern Human Trafficking Task Force and was briefed on their investigation. Your affiant viewed several images that depicted Minor Victim in a state of nudity that appeared to be taken at the cabin located at 300 Coon Run Road in Lower Salem, Ohio. During the communications with WCSO

and the Southeastern Human Trafficking Task Force, a request for assistance was made in the ongoing investigation of **SABOLICK**, including conducting further examinations and continuing forensic analysis of **SABOLICK's** seized devices.

54. On or about September 3, 2021, Homeland Security Investigations executed a federal search warrant on **SABOLICK's** seized devices. The forensic examination of the devices revealed, numerous additional nude images of Minor Victim, images and videos of other child exploitation material, chat records between **SABOLICK** and Minor Victim discussing sexual activity, contracts indicating **SABOLICK** operated a sex-related business in the Philippines, and photos and identifications of the individuals believed to be employed in **SABOLICK's** Filipino sex-related business. Additionally, communications were recovered from multiple social media/messaging platforms between **SABOLICK** and other individuals discussing sexual activity with juveniles. **SABOLICK's** usernames or accounts on the various platforms were associated with his james1021build@gmail.com account.

55. For example, the investigation involved a search warrant executed on **SABOLICK's** Facebook account. The returns of the search indicate that **SABOLICK** used Facebook's messaging platform to communicate regarding the following: with another minor female, ostensibly in an attempt to engage in sex acts with the minor female; individuals abroad, including in the Philippines, regarding sexually explicit images of a minor child in the Philippines; directing sexual acts to be performed on a minor in what appears to be in exchange for money; and the display of grooming behavior as **SABOLICK** spoke with adults who had children and indicated he was attracted to the children. As mentioned above, the email address associated with **SABOLICK's** Facebook account is the SUBJECT ACCOUNT, james1021build@gmail.com.

56. In my training and experience, individuals who conduct sex-related businesses using the internet—such as **SABOLICK's** sex-related business in the Philippines—often use email and their email accounts to facilitate such businesses, and that such businesses often relate to the sexual exploitation of minors.

14

57.  Also in my training experience, individuals—like **SABOLICK**—who use Facebook and other online messaging platforms, which are associated with an email address, often use the email address to further their interest in illegal sexual activities with respect to minor children, whether in attempts to engage in sex acts with minor children or to receive or distribute child pornography.

58.  Based on the information that had been gathered to date by WCSO and the child exploitation related images, videos, and communications recovered during the forensic analysis of **SABOLICK's** devices, your affiant believes that there is probable cause that the **SUBJECT ACCOUNT** contains evidence of **SABOLICK's** child pornography and child exploitation activities.

### VII. CONCLUSION

59.  Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that evidence of a crime, contraband, fruits of crime, or other items illegally possessed, or property designed for use, intended for use, or used in committing a crime, will be found on the computer systems controlled by Google, Inc.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the Google accounts described in Attachment B were used to transport, receive, possess, or access child pornography, and/or coerce or entice a minor to engage in sexual activity, or to attempt or conspire to do so.  Accordingly, a search warrant is requested.

*Nate Simon*
Nate Simon
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this ___19th___ day of January, 2021.

Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A
## LIST OF ITEMS TO BE SEIZED

I. Information to be disclosed by Google

1. To the extent that the information described in Attachment A is within the possession, custody, or control of Google, Inc. Google is required to disclose the following information to the government for the account(s) or identifier(s) listed in Attachment B.  Such information should include the below-described content of the subject accounts from January 1, 2019, to July 26, 2021.

    a. The contents of all e-mails stored in the account, including copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

    b. Any deleted emails, including any information described in subparagraph "a." above;

    c. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

    d. All records or other information stored by an individual using the Google accounts, including address books, contact and buddy lists, calendar data, pictures, videos, documents and files. In addition, please provide the photos in their original file format, including EXIF information

    e. All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

    f. All Google Chat, Google Meet, and Google Drive archives stored on servers controlled by Google for the account listed in Attachment B.

    g. All privacy settings and other account settings.

II. Information to be seized by the government

1. All information described above in Section I, including correspondence, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages that constitutes evidence of a crime, contraband, fruits of crime, or other items illegally possessed, or property designed for use, intended for use, or used in committing a violation of 18 U.S.C. §§ 2252, 2252A, or 2422, including, for each account or identifier listed on Attachment A, information pertaining to the following matters, including attempting and conspiring to engage in the following matters:

   a. Any of the SUBJECT OFFENSES;
   b. Credit card and other financial information including but not limited to bills and payment records;
   c. Evidence of who used, owned, or controlled the account or identifier listed in Attachment B;
   d. Evidence of the times the account or identifier listed on Attachment B was used;
   e. Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed in Attachment B and other associated accounts.

## ATTACHMENT B
## ACCOUNT TO BE SEARCHED

This warrant applies to information associated with the Google account (Gmail, Google Chat, Google Meet, Google Drive, etc.) **james1021build@gmail.com** that is stored at premises owned, maintained, controlled, or operated by Google, Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

Google, Inc. shall disclose responsive data, if any, by sending to Attn: SA Nate Simon at 675 Brooksedge Blvd., Westerville, OH 43081 using the US Postal Service or another courier service, notwithstanding 18 U.S.C. 2252A and or 2907.322 R.C. or similar statute or code.

18